Gordon Wayne BELL,
Plaintiff-Appellant,

v.

KELSO OIL COMPANY and Aetna Life and Casualty Company,
Defendants-Appellees.

Supreme Court of Tennessee.

April 21, 1980.

K. Karl Spalvins, Knoxville, for plaintiff-appellant.

Ray J. Campbell, Jr., Knoxville, for defendants-appellees; Poore, Cox, Baker, Ray & Byrne, Knoxville, of counsel.

## OPINION

BROCK, Chief Justice.

The trial court dismissed the plaintiff's action for workmen's compensation benefits and he has appealed.

### I

The employee, Gordon Bell, received injuries when he was stabbed with a knife by Andy Finkston at a motel in Knoxville on October 17, 1977. The employer, Kelso Oil Company, shortly prior to that time, had purchased another enterprise, the Trimble Oil Company. The plaintiff, Bell, had been a salesman for Trimble and witness Ron Mason had been a salesman for Kelso Oil Company, but following the merger both men were employed by Kelso. The assailant, Finkston, was not employed by either company and was unknown to either plaintiff Bell or witness Mason. Finkston was the boy friend of Miss Vicki Stiles who worked as a secretary for the Kelso Oil Company.

A third company, unnamed in the record, that was engaged in marketing automobile tires had requested the Kelso Company management for an opportunity to address its sales and office personnel in an effort to promote the sale of its tires. In accordance with this request, the Kelso management ordered its sales personnel and office employees, including Miss Stiles, to attend a "sales meeting" at the Quality Court Motel in Knoxville where they were to be addressed by a speaker from the the tire company and thereafter were to be treated to dinner and, apparently, to cocktails, since the evidence shows that Miss Stiles was "drinking" at the meeting.

The evidence indicates that the meeting began about 6:30 p. m. on October 17, 1977, and that the tire company's speaker had completed his presentation respecting his company's products at about 10:30 p. m. At some time between 6:30 and 10:30 p. m., Finkston, Miss Stiles' boy friend, arrived on the scene and made two or three attempts to enter the room where the meeting was being conducted.

When this meeting broke up at about 10:30 p. m., but before dinner, the plaintiff Bell and Mr. Mason, who had known each other for a number of years walked outside into the motel parking lot to discuss a business problem involving the overlapping of their sales territories and while they were standing there Finkston came up and accosted them with this question:

"Are you with that Kelso bunch?"

They replied, of course, in the affirmative, whereupon Finkston declared:

"Well, I'm tired of you all trying to mess with my girl friend in there."

At this point Finkston attacked Bell, stabbing him with a knife, causing the injuries for which he seeks benefits in this action.

It appears from the record that neither Bell nor Mason made any statement or did anything to provoke the attack. In fact, Mason testified:

"I think we did make a statement that 'I don't blame you for being mad.' You know, I think she was in there drinking. I think that is the reason he was upset, you know."

The testimony indicates that the stabbing occurred at about 11:00 p. m.

The plaintiff Bell testified as follows:

"Q. All right, and the assailant came up?

"A. Right.

"Q. What did he tell you?

"A. Well, first of all, he asked us if we were that damn Kelso bunch and we said 'yeah.' He looked at me and said, 'I'm not afraid of you.' He said, 'you're a big guy.' He said, 'but I'm a mean son of a bitch. I've been shot and I've been cut.' I didn't know what to say you know. I didn't know the guy. I had never seen him before.

"Q. All right.

"A. And he advanced at me with his fist and I hit him.

"Q. All right, Sir, then what happened?

"A. I walked off. I said, 'Look, I don't know you.' And he said—first of all he told me, he said, 'I'll kill you.' And then after he had advanced at me, he hit me, I hit him, then he said, 'I'll shoot you.' Well, then I started walking off.

"Q. All right.

"A. Then the next thing I knew he was back down in front of me and had a knife in me before I knew it. I thought he had a pistol. I didn't know he had stabbed me for a minute.

\* \* \* \* \* \*

"Q. All right, and you heard later that he mistook you for a guy that he thought was running around with his girl friend, is that right, another Kelso employee?

"A. Now this is hearsay, yeah.

"Q. Now that's what you understood? You asked that guy and he denied it?

"A. Yes.

"Q. He was thinking he was taking it out on you for something somebody else had been doing to his girl friend?

"A. Right.

\* \* \* \* \* \*

"Q. And that man didn't stab any member of the public indiscriminately, he was looking for a Kelso guy, wasn't he?

"A. I believe so.

"Q. And you fit that description, you were a Kelso man, weren't you?

"A. Yes. (Nod)

\* \* \* \* \* \*

"Q. You didn't know Miss Stiles before, did you?

"A. No.

"Q. Had you ever met her before?

"A. I don't think I had even seen her before that night and we stood up and introduced ourselves around the table."

The trial court concluded from the evidence, outlined above, that the injury to the plaintiff occurred during the course of his employment, but, that it did not arise out of his employment.

Our statute, T.C.A., § 50–902(d), as do the statutes of most jurisdictions, requires that an injury, to be compensable, must be the result of "an accident arising out of and in the course of employment."

This Court and others over the years have attempted, with little success, to wring

more certainty and specificity from the terse words "arising out of and in the course of employment." This has resulted in various judicial "tests" and "doctrines," such as, the "positional doctrine," the "peculiar hazard doctrine," the "foreseeability" test, the "street-risk doctrine," and others.

■ It is difficult, perhaps impossible, to compose a formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment to those which do not; hence, in determining whether an accident arose out of and in the course of the employment, each case must be decided with respect to its own attendant circumstances and not by resort to some formula. *See*: 99 C.J.S. *Workmen's Compensation* § 209 (1958).

■ In this endeavor, the relation of the employment to the injury is the essential point of inquiry, liability for workmen's compensation is not based upon any act or omission of the employer. Thus, the law of tort causation, wherein liability is predicated upon fault and nullified by contributory fault, is not applicable in workmen's compensation cases.

■ Generally, an injury arises out of and in the course of the employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment; and, any reasonable doubt as to whether an injury "arose out of the employment" is to be resolved in favor of the employee. *Great American Indemnity Company v. Friddell*, 198 Tenn. 360, 280 S.W.2d 908 (1955); *Tapp v. Tapp*, 192 Tenn. 1, 236 S.W.2d 977 (1951).

The observation of this Court in *Travelers Insurance Company v. Googe*, 217 Tenn. 272, 279, 397 S.W.2d 368, 371 (1966), is pertinent here:

"The phrase, 'in the course of,' refers to time and place, and 'arising out of,' to cause or origin; and an injury by accident to an employee is 'in the course of' employment if it occurred while he was performing a duty he was employed to do; and it is an injury 'arising out of' employment if caused by a hazard incident to such employment."

We have said that an injury arises out of the employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work [was] required to be performed and the resulting injury." *T. J. Moss Tie Co. v. Rollins*, 191 Tenn. 577, 235 S.W.2d 585 (1951).

I

Injuries that result from a willful assault upon an employee present one of the most difficult cases for determination whether such injuries arise out of and in the course of the employment. We recently had occasion to investigate this problem in *Hudson v. Thurston Motor Lines, Inc.*, Tenn., 583 S.W.2d 597 (1979). Mr. Justice Fones, writing for the Court, reviewed the decisions of this Court involving injuries resulting from assaults upon employees. He summarized the state of the law with respect to this problem as follows:

"The issue of whether the accident arose out of the employment is a more difficult question. The standards that this Court has adhered to, throughout the history of workmen's compensation litigation, although expressed in widely-varying language, center upon a showing of (1) a causal connection between the employment and the injury or (2) a risk incidental to or peculiar to the employment. Coverage has sometimes been rejected on the grounds that the risk or danger that caused the accident and injury was an exposure common to the public. In fact, the trial judge's order denying compensation in this case was predicated upon the statement that '[p]laintiff was exposed only to the risks common to all members of the community in going to eat lunch.' Professor Larson classifies the standards noted above as the 'peculiar risk test.' He summarizes the trend of acceptability of that test as follows:

'Most courts in the past have interpreted "arising out of employment" to require a showing that the injury was

caused by an increased risk to which claimant, as distinct from the general public, was subjected by his employment. A substantial number have now modified this to accept a showing merely that the risk, even if common to the public, was actually a risk of this employment. An important and growing group of jurisdictions has adopted the positional-risk test, under which an injury is compensable if it would not have happened but for the fact that the conditions or obligations of the employment put claimant in the position where he was injured.

'The peculiar-risk test, requiring that the source of harm be in its nature (as distinguished from its quantity) peculiar to the occupation, and the proximate cause test, requiring foreseeability and absence of intervening cause, are now largely obsolete.' Larson, *supra* § 6.00.' "

583 S.W.2d at 599–60.

The employee in the *Hudson* case was a truck driver who was assaulted as he left a restaurant and approached the company's truck that he had parked on the parking lot of the restaurant while he ate lunch. Because of the factual differences between that case and the one at bar, the *Hudson* decision which held that the employee was entitled to recover compensation under the "street risk doctrine" does not precisely control the issue presented in the instant case.

Nevertheless, the observations there made are instructive as we seek a proper resolution of the issue here presented.

That the injury in the instant case arose during the course of the plaintiff's employment is conceded; it is denied, however, that the injury arose out of the employment.

The defendant relies upon the decisions of this Court in *White v. Whiteway Pharmacy, Inc.*, 210 Tenn. 449, 360 S.W.2d 12 (1962) and *Thornton v. RCA Service Company*, 188 Tenn. 644, 221 S.W.2d 954 (1949). In the *White* case it was held that the death of the employee did not arise out of the employment, although it did occur during

the course thereof. The employee and her husband had been having marital difficulties for an extended period of time, each accusing the other of disloyalty, and the husband came to her place of employment, a drugstore, accosted her in the basement of the store where she was working, demanded money from her and, upon her refusal, shot and killed her. Obviously, no causal connection existed between the employment and the employee's death; the employment did not subject her to the assault nor did the irate husband act from any motive in anywise connected to her employment.

In the *Thornton* case, the employee's duties required that he travel from town to town and he stopped at a restaurant along his journey to have lunch. While in the restaurant he was assaulted by one who was "crazy, drunk or otherwise irresponsible" and it was held that his injury did not arise out of his employment and was not compensable. Whether the *Thornton* decision remains a viable precedent is debatable since our decision in *Hudson v. Thurston Motor Lines, Inc., supra.* In any event, as pointed out in *Hudson*:

" . . . there was nothing to identify the employee [in *Thornton*] with his employment at the time and place of the assault."

583 S.W.2d at 603.

We conclude that both the *White* and the *Thornton* decisions are distinguishable from the case at bar.

Plaintiff relies upon decisions of this Court in *Hudson, supra*; *W. S. Dickey Manufacturing Company v. Moore*, 208 Tenn. 576, 347 S.W.2d 493 (1961); *Whaley v. Patent Button Co.*, 184 Tenn. 700, 202 S.W.2d 649 (1947); and *Carmichael v. J. C. Mahan Motor Co.*, 157 Tenn. 613, 11 S.W.2d 672 (1928). In our opinion, the decisions in those cases do support the position of the plaintiff, as does the decision of this Court in *Oman Construction Company v. Hodge*, 205 Tenn. 627, 329 S.W.2d 842 (1952). The decisions in *Katz v. Reissman Rothman Corporation*, 24 N.Y.S.2d 807, 261 App.Div. 862

(1941), reargument denied 26 N.Y.S.2d 504, 261 App.Div. 1008, appeal denied (1941); and *Hartford Accident & Indemnity Company v. Cardillo*, 112 F.2d 11, 72 App.D.C. 52, certiorari denied 60 S.Ct. 1100, 310 U.S. 649, 84 L.Ed. 1415 (1940) also support plaintiff's insistence.

In *W. S. Dickey Manufacturing Company, supra*, it was held that an assault which grew out of an argument between employees over performance of the work grew out of the employment and was compensable. The Court noted that an injury is compensable if the employment increases the probability of quarrels among the employees and one is thus injured in such a quarrel.

In the *Whaley* case, *supra*, the employee was the operator of a button molding machine in a button factory and was injured while on the job when shot through a window with a .22 rifle by a former employee who had quit or been discharged and who apparently was motivated by the fact that the plaintiff was working on a button molding machine similar to one which the assailant had operated prior to his separation from employment. Although the assailant was adjudged after the shooting to be criminally insane, the Court held that the facts disclosed a causal connection between the conditions under which the work was performed and the resulting injury and was, therefore, compensable. In our view, this decision in *Whaley* has peculiar application to the case at bar.

In the *Carmichael* case, *supra*, the employee of an automobile garage was shot in the eye with an air rifle by a 10-year-old boy while the plaintiff was engaged in the performance of his duties. The boy's father, accompanied by his son and two other children, had brought his automobile to the employer's garage to be repaired. The boys were playing around the premises and the employee was sweeping out a showroom when the shooting occurred. This Court held that the injury was the result of conditions inseparably connected with the public service given by the plaintiff's employer to his patrons and that the injury could be fairly traced to the employment.

In the *Katz* case, *supra*, a female employee sustained injuries by reason of an attack upon her by another female employee who apparently was jealous of attentions paid to the injured employee by a male co-employee. The New York court held that the assault arose out of the employment and that the injuries suffered were compensable. The similarity of these facts to those of the instant case is obvious.

In *Hartford Accident & Indemnity Company v. Cardillo*, *supra*, it was reasoned that an injury to an employee who was merely the victim of, not a participant in, a quarrel resulting in the injury might be compensable as arising out of and in the course of the employment, irrespective of whether the fighting is by fellow employees or by strangers, or whether the fighting is over work or about something else, it being sufficient that the work brings the injured employee within the range of peril requiring his presence there when it strikes.

Also pertinent here are the decisions of this Court in *Oman Construction Company v. Hodge*, *supra*, and *Electro-Voice, Inc. v. O'Dell*, Tenn., 519 S.W.2d 395 (1975). In the *Oman Construction Company* case this Court held that the death of the employee who was struck by lightning arose out of and in the course of his employment because the evidence showed that he was subjected to a special or greater risk because of the concentration of road machinery at the site where the lightning struck. Said the Court:

> "In the present case lightning did strike the deceased and killed him under conditions which were created by his employer and described by expert testimony as being more hazardous with regard to being struck by lightning than the position of others in the community, not so located." 329 S.W.2d at 844.

In the *Electro-Voice, Inc.*, case, *supra*, we upheld an award to an employee for injuries resulting from being stung by bees at the plant where she worked. The Court, citing the *Carmichael* and *Oman Construction Company* cases, *supra*, concluded that the bee stings and injuries to the employee arose out of the employment, saying:

"On considering these circumstances, we are forced to the conclusion that the bees in the plant were part of the environment of working on the assembly line and, consequently, were a risk or hazard of appellee's employment."

519 S.W.2d at 397.

Applying the principles from the foregoing cases, we conclude that the assault and injury in the instant case arose out of the employment. First, it was the employment which subjected the employee to the hazard of the assault and, secondly, the motive of the assailant to make the assault on the plaintiff arose out of the nature of the "work," i. e., the wining and dining of his girl friend, Miss stiles, a coemployee of plaintiff, in the late hours of the night at a motel. Just as in the *Whaley, Carmichael*, and *Katz* cases, *supra*, it was the plaintiff's work environment which subjected him to the assault and, as in the *Whaley* and *Katz* cases, *supra*, the assailant was motivated by the conditions of the "work" to make the assault. Here, the assailant became angry because of the nature of the work, that is, the manner and environment of his girl friend's employment and he assaulted the plaintiff *because of* the fact that the plaintiff was "with that Kelso bunch." Although the assailant and the plaintiff were total strangers, the assailant stabbed the plaintiff because ". . . I'm tired of you all trying to mess with my girl friend in there."

It is our conclusion that the assault and injury has a rational causal connection to the work and occurred while the employee-plaintiff was engaged in the performance of his duties. Accordingly, we hold that the trial court erred in dismissing the complaint.

The judgment of the trial court is reversed and the cause is remanded for determination of the benefits to which plaintiff is entitled under the workmen's compensation laws.

FONES, COOPER, HENRY and HARBISON, JJ., concur.