**Linda Sue HALL, Plaintiff-Appellee,**

v.

**AUBURNTOWN INDUSTRIES, INC., and Gulf and Western Industries, Inc., Defendants-Appellants.**

Supreme Court of Tennessee, at Nashville.

Jan. 22, 1985.

Frank Buck, Smithville, for plaintiff-appellee.

Joseph C. Wilson, III, Chattanooga, for defendants-appellants.

## OPINION

BROCK, Judge.

In this worker's compensation case the trial court awarded benefits to the plaintiff-employee who sustained a ruptured intervertebral disc. The only issue raised by the defendant on this appeal is whether or not the plaintiff's injury and resulting disability "arose out of" as well as "in the course of" her employment with the defendant. *See* T.C.A., § 50–6–102(a)(4). The operative facts are essentially undisputed. The evidence shows that the plaintiff, who was a sewing machine operator for Auburntown Industries, on the date of her accident was instructed to watch another operator in order to learn a new technique; then while doing so the plaintiff sat on a cart equipped with coaster wheels which ordinarily was used to transport materials in the defendant's plant; that while she was observing, as instructed, her foreman came and instructed her to return to her department to perform her regular duties; that in compliance with this instruction the plaintiff rose from the sitting position and in so doing twisted in an effort to go through a space which the record shows to be between 12 and 18 inches in width; and as she thus rose and twisted to make this maneuver she felt something "pop" in her back and immediately began to suffer severe pain in her low back.

In her testimony, the plaintiff described her accident in the following words:

"And I started to get up and I twisted in some way, and my back popped. And

when it did, I caught my back, and I said, Tina, you'll have to give me time to get back to my machine. And I had to twist going back to my machine, and—(interrupted)

"Q. Well why did you have to twist going back to your machine?

"A. Well they were all so close together there.

\* \* \* \* \* \*

"Q. All right. As you got up, Mrs. Hall, did you get straight up, or, just tell the Court how you got up?

"A. I got up in a twisted fashion, and when I did it popped, and it just—it didn't seem like it would be that bad til I went back over there at my machine and started sewing.

"Q. All right now would there have been room for you to walk between the back of the lady who was sewing, and Mrs. Youngblood's machine without— how would you have gotten through there?

"A. I had to twist kindly.

"Q. Ok. Was it—show the Court how much room?

"A. Well, between there and the little buggy here there was very little.

"Q. But the place you had to walk on between Mrs. Youngblood's machine and the lady that was sewing that is not shown in the photograph would have been approximately how much distance?

"A. Can I show with you with my hands?

"Q. Sure.

"A. Something like that right there.

"Q. Let the record reflect—(interrupted)

"The Court: Approximately a foot.

\* \* \* \* \* \*

"Q. All right, and tell the Court about the rollers? Can you testify regarding whether the chair, or cart moved when you got up, or didn't, or just tell the Court the truth?

"A. No, Sir, now I cannot testify that it rolled. All I remember is me twisting, and my back popping. And all the pain the rest of the day was just terrible. And that's it."

Of course, there is no question that this accident occurred "in the course of" the plaintiff's duties. The dispute is about whether it "arises out of" them.

The plaintiff's physician, Dr. Alexander Chernowitz, testified as follows:

"Q. Okay, the twisting, if that were the case, in fact—would that be more compatible with the injury which she alleged to have sustained?

"A. I think so. Yes."

■ The defendant argues that the plaintiff's injury was such that it could have been sustained almost anywhere, in a variety of ordinary situations; that it was not the result of a hazard peculiar to the employment. It is ingeniously, if not persuasively, argued that an injury is not compensable if it is one that might as easily have occurred in the employee's home or while she was engaged in her personal pursuits. It is true enough that, to be compensable, an injury must have some causal relation to the employee's work. It is not within the worker's compensation law if it is only "coincidental, or contemporaneous, or collateral" to it. *Jackson v. Clark & Fay, Inc.,* 197 Tenn. 135, 270 S.W.2d 389 (1954).

A number of our cases contain language to the same effect. *See Jackson v. Clark & Ray, Inc., supra; Sandlin v. Gentry,* 201 Tenn. 509, 300 S.W.2d 897 (1957); *Knox v. Batson,* 217 Tenn. 620, 399 S.W.2d 765 (1966); *Hill v. St. Paul Fire and Marine Insurance Co.,* Tenn., 512 S.W.2d 560 (1974); *Sudduth v. Williams,* Tenn., 517 S.W.2d 520 (1974). But, as is frequently the case, it is easy to mistake the rule of these cases by extending their dicta beyond the confines of their facts.

In *Jackson,* the employee was killed when the truck in which he was riding from his work to his sleeping quarters was overtaken by a storm. In *Hill,* a night watchman died when the building he was guarding collapsed in a tornado. The dece-

dents in *Knox v. Batson,* were asphyxiated in a motel room where they had taken temporary quarters while working on a construction job. In *Sandlin v. Gentry,* the deceased provoked an encounter with a fellow employee which ended in his being shot to death. In *Sudduth v. Williams,* the claimant was an epileptic who had a grand mal seizure while at work.

In each of these cases there is some special circumstance—a pre-existing condition, a deliberate assault, or an act of God—which caused the death of the worker. Ordinarily, death or injury from these causes is not compensable, but under special circumstances may be. If a work related accident aggravates an idiopathic condition, causing injury or death, or if it is a contributing cause, compensation is available. *McCann Steel Co. v. Carney,* 192 Tenn. 94, 237 S.W.2d 942 (1951).

Similarly, if because of the nature of the work there is a special risk of exposure, beyond that incurred by the general public, to criminal attacks or to the violence of the elements, the injury is one arising out of the employment. *Mason-Dixon Lines v. Lett,* 201 Tenn. 171, 297 S.W.2d 93 (1956); *City of Gallatin v. Anderson,* 209 Tenn. 392, 354 S.W.2d 84 (1962); *Bell v. Kelso Oil Co.,* Tenn., 597 S.W.2d 731 (1980). But there is no requirement of a special risk in a case like this one, where it is obvious that nothing extraneous to the employment caused the injury. Many accidents which are routinely held by this Court to be compensable could have occurred off the job and under different circumstances. For instance, an employee who suffers a back injury while lifting a load during the course of his employment which is beyond his capability could just as easily sustain the same injury while lifting the same load at home or at some other place unconnected with his work. The true rule which this Court has followed is that, generally, an injury arises out of and in the course of employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment; and, any reasonable doubt as to whether an injury arose out of the employment or not is to be resolved in favor of the employee. *Bell v. Kelso Oil Co., supra.*

The simple duties in which the plaintiff was engaged at the time of her injury ought not to have resulted in an injury, but the proof is that they did, and the record supports no inference that the injury arose out of anything except the employment. Accordingly, the decree of the Chancellor is affirmed and costs are taxed against the appellants.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.