# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
MAY 26, 2010 Session

## MARY COLEMAN, ET AL. v. ST. THOMAS HOSPITAL

**Direct Appeal from the Circuit Court for Davidson County**
**No. 04C-2183      Hamilton Gayden, Judge**

---

**No. M2009-02526-COA-R10-CV - Filed August 4, 2010**

---

Plaintiffs filed suit against their employer, alleging common law negligence and negligent infliction of emotional distress due to their exposure to carbon monoxide in the workplace. The employer filed a motion for summary judgment, contending that Plaintiffs' tort claims were barred by Tennessee's workers' compensation law.  The trial court denied the employer's motion for summary judgment, concluding that Plaintiffs' injuries did not "arise out of" their employment.  The employer's application for an extraordinary appeal was granted.  We reverse and remand for entry of an order granting summary judgment to the employer.

**Tenn. R. App. P. 10; Extraordinary Appeal; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Mary Martin Schaffner, Nashville, Tennessee, for the appellant, St. Thomas Hospital

John P. Williams, T. Chad White, Nashville, Tennessee, for the appellees, Mary Coleman, Chloe Nguyen and Cassandra Dixon

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Mary Coleman, Chloe Nguyen, and Cassandra Dixon ("Plaintiffs") were employed by St. Thomas Hospital and worked at the St. Thomas Hospital Employees Credit Union on a daily basis.  The credit union's offices were located on the first floor of a building owned and operated by St. Thomas Hospital.  In the spring and summer of 2003, Plaintiffs allegedly began to experience a wide range of symptoms including fatigue, headaches, dizziness, nausea, vomiting, seizure, and loss of consciousness.  In August of 2003, it was discovered that the gas-powered hot water heater in the basement of the building had become improperly vented and was producing carbon monoxide that was entering the credit union.  The level of carbon monoxide present in the credit union was at times of such high concentrations that exposure to the gas was extremely hazardous and potentially lethal.

Plaintiffs subsequently filed a complaint in the circuit court of Davidson County against their employer, St. Thomas Hospital, alleging common law negligence and negligent infliction of emotional distress and seeking compensatory and punitive damages.   St. Thomas Hospital filed an answer in which it asserted that Plaintiffs' exclusive remedy against it was pursuant to Tennessee's Workers' Compensation Law.  St. Thomas Hospital also filed a motion for summary judgment, again contending that Plaintiffs' tort claims were barred due to the exclusive remedy provided by the Workers' Compensation Law.  Plaintiffs filed a response, arguing that their claims should be governed by premises liability law.  Plaintiffs conceded that they were full-time employees of St. Thomas Hospital, and that St. Thomas Hospital was an employer subject to the Workers' Compensation Law.[1]  However, Plaintiffs contended that their injuries did not "arise out of" their employment, so that they were not limited to the remedies provided by the Workers' Compensation Law.

The trial court denied St. Thomas Hospital's motion for summary judgment, concluding that Plaintiffs' injuries did not arise out of their employment.  St. Thomas Hospital sought permission to file an interlocutory appeal, which the trial court denied.  St. Thomas Hospital then filed an application for an extraordinary appeal, which was granted by the Middle Section of this Court.

---

[1]  St. Thomas Hospital and St. Thomas Hospital Employees Credit Union are actually separate legal entities.  St. Thomas Hospital had leased these employees to the Credit Union, but the contract provided that they would remain employees of St. Thomas Hospital at all times.

## II.  ISSUE PRESENTED

On appeal, St. Thomas Hospital contends that Plaintiffs' tort claims are barred by the Workers' Compensation Law because their injuries arose out of their employment, and as a result, the trial court erred in denying its motion for summary judgment. For the following reasons, we reverse the decision of the circuit court and remand for further proceedings consistent with this opinion.

## III.  STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." **Green v. Green**, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists." **Id.** at 514 (citing *Martin*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993)). "If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law." **Id.** (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. **Martin**, 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." **Id.** (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion – that the moving party is entitled to a judgment as a matter of law." **Green**, 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002)).

## IV.  DISCUSSION

The primary purpose of Tennessee's Workers' Compensation Law is "to afford workers compensation for job-related injuries regardless of fault." ***Woods v. Harry B. Woods Plumbing Co., Inc.***, 967 S.W.2d 768, 772 (Tenn. 1998).  The Workers' Compensation Law is "a legislatively created quid pro quo system where an injured worker forfeits any potential common law rights for recovery against his or her employer in return for a system that provides compensation completely independent of any fault on the part of the employer." ***Wait v. Travelers Indem. Co. of Illinois***, 240 S.W.3d 220, 224 (Tenn. 2007) (citing Tenn. Code Ann. § 50-6-108(a); *Liberty Mut. Ins. Co. v. Stevenson*, 368 S.W.2d 760, 762 (Tenn. 1963)).  The Workers' Compensation Law provides that "[t]he rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, . . . shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of the injury or death." **Tenn. Code Ann. § 50-6-108(a).**

In order to qualify as a compensable workers' compensation claim, the employee's injury must both "arise out of" and occur "in the course of" employment. ***Cloyd v. Hartco Flooring Co.***, 274 S.W.3d 638, 643 (Tenn. 2008).  If the employee's injury did not "arise out of" and occur "in the course of" employment, the injury is not compensable, and the employee does not have the option of accepting the remedies of the Workers' Compensation Law. ***Clawson v. Burrow***, 250 S.W.3d 59, 62 (Tenn. Ct. App. 2007).  If, however, the injury did "arise out of" and occur "in the course of" employment, the employee must accept the remedies of the Workers' Compensation Law to the exclusion of any other right or remedy. ***Id.***; *see also* **Tenn. Code Ann. § 50-6-103(a)** (providing that every employee subject to the Workers' Compensation Law "shall . . . accept compensation for personal injury or death by accident arising out of and in the course of employment.").

"[Our Supreme] Court and others over the years have attempted, with little success, to wring more certainty and specificity from the terse words 'arising out of and in the course of employment.'" ***Bell v. Kelso Oil Co.***, 597 S.W.2d 731, 733-34 (Tenn. 1980).

> The statutory requirements that a compensable injury arise out of and occur in the course of the employment have been the subject of extensive litigation in Tennessee and elsewhere. *See* Tenn. Code Ann. § 50-6-102(13) (2005) (stating that to be eligible for workers' compensation benefits, an employee must suffer an "injury by accident arising out of and in the course of employment").  Our state is by no means unique in having adopted these two requirements, for nearly all states require that the injury arise out of and occur in the course of the employment.  1 *Larson's Workers' Compensation*

*Law* § 3.01 (2004). "Indeed, the bulk of workers' compensation litigation [nationwide] centers on these two requirements." *Blankenship v. Am. Ordnance Sys.,* 164 S.W.3d 350, 354 (Tenn. 2005). As one commentator has observed, " '[f]ew groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation.'" *Id.* (quoting 1 *Larson's Workers' Compensation Law* § 3.01 (2004)).

*Anderson v. Westfield Group*, 259 S.W.3d 690, 695 (Tenn. 2008). Various judicial "tests" and "doctrines" have emerged for determining when an injury arises out of and occurs in the course of employment, such as the "positional doctrine," the "peculiar hazard doctrine," the "foreseeability test," the "street-risk doctrine," and others. *See Bell*, 597 S.W.2d at 734. However, our Supreme Court has "consistently abstained from adopting any particular judicial test, doctrine, formula, or label that purports to 'clearly define the line between accidents and injuries which arise out of and in the course of employment [and] those which do not[.]'" *Wait*, 240 S.W.3d at 225 (quoting *Bell*, 597 S.W.2d at 734). The Court has repeatedly rejected "the use of artificial labels," stating that "classification and labeling is not the best method of determining whether an injury is compensable." *Hall v. Mason Dixon Lines, Inc.*, 743 S.W.2d 148, 151 (Tenn. 1987). The Court has found it "difficult, perhaps impossible to compose a formula" which clearly defines those accidents resulting in compensable injuries. *Id.* As such, in Tennessee, "[t]here is no formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment and those which do not." *DeBow v. First Inv. Prop., Inc.*, 623 S.W.2d 273, 275 (Tenn. 1981). Instead, "'each case must be decided with respect to its own attendant circumstances and not by resort to some formula.'" *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 499 (Tenn. 1992) (quoting *Bell*, 597 S.W.2d at 734). As a result, "the standards employed by [the] Court in deciding whether accidents arise out of employment have led to diverse results." *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 600 (Tenn. 1979).

The requirements that an injury "arise out of" and occur "in the course of" employment are not synonymous, although both elements exist to ensure a work connection to the injury for which the employee seeks benefits. *Wait*, 240 S.W.3d at 225; *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 533-34 (Tenn. 2006). The "in the course of" requirement refers to the time, place, and circumstances of the event. *Cloyd*, 274 S.W.3d at 643. An accidental injury is "in the course of" employment if it occurred while the employee was performing a duty he or she was employed to do.[2] *Id.* In contrast, the "arising out of" requirement refers to the injury's cause or origin. *Id.*; *Wait*, 240 S.W.3d at 225. An injury

_____

[2] Plaintiffs concede that their injuries occurred "in the course of" their employment because the exposure occurred while they were working at the credit union.

-5-

arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. ***Trosper v. Armstrong Wood Prods., Inc.***, 273 S.W.3d 598, 604 (Tenn. 2008); ***Foreman v. Automatic Sys., Inc.***, 272 S.W.3d 560, 571 (Tenn. 2008); ***Anderson***, 259 S.W.3d at 696. In sum, an injury generally arises out of and is in the course of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment. ***Cloyd***, 274 S.W.3d at 643; ***Saylor v. Lakeway Trucking, Inc.***, 181 S.W.3d 314, 318 (Tenn. 2005); ***Fritts v. Safety Nat'l Cas. Corp.***, 163 S.W.3d 673, 677 (Tenn. 2005).

Our Supreme Court has often stated that an injury "must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work" in order to be compensable. *See, e.g.*, ***Foreman***, 272 S.W.3d at 572; ***Anderson***, 259 S.W.3d at 696; *see also* ***Wait***, 240 S.W.3d at 228 ("Generally, for an injury to 'arise out of' employment, it must emanate from a peculiar danger or risk inherent to the nature of the employment."). Accordingly, an injury that is purely coincidental, contemporaneous, or collateral with the employment will not be considered as arising out of the employment. ***Foreman***, 272 S.W.3d at 572; ***Anderson***, 259 S.W.3d at 696; ***Wait***, 240 S.W.3d at 228. For example, an employee may not recover for an injury that occurs while simply walking unless there is an employment hazard, such as a puddle of water or a step, in addition to the injured employee's ambulation. ***Wilhelm v. Krogers***, 235 S.W.3d 122, 128-29 (Tenn. 2007). Courts have reasoned that such an injury would have occurred whether the employee happened to be at work or at another location. ***Id.*** at 128. Likewise, injuries from assaults occurring in the workplace but originating from inherently private disputes, such as domestic disputes, are not compensable. ***Wait***, 240 S.W.3d at 227. Compensation has also been denied where an employee choked on a piece of chewing gum while at work, ***Jones v. Sonoco Prods., Inc.***, No. 9, 1992 WL 33269 (Tenn. Feb. 24, 1992), and where an employee injured her knee while using the restroom at work, ***Connor v. Chester County Sportswear Co.***, No. W2001-02114-WC-R3-CV, 2002 WL 31348662 (Tenn. Workers' Comp. Panel Oct. 18, 2002). Because there was no causal connection between these injuries and the conditions under which the work was required to be performed, the injuries did not "arise out of" the employment. ***Jones***, 1992 WL 33269, at *3; ***Connor***, 2002 WL 31348662, at *3. Again, "[i]t is not enough that the injury coincidentally occurred at work; rather, it must in some way be caused by or related to the working environment or conditions of the employment." ***Connor***, 2002 WL 31348662, at *3 (citing *Miedema v. Dial Corp.*, 551 N.W.2d 309 (Iowa 1996)). "The mere presence of an employee at the place of his employment will not alone result in the injury being considered as arising out of the employment." ***Rogers v. Kroger Co.***, 832 S.W.2d 538, 541 (Tenn. 1992) (citing *Jordan v. United Methodist Urban Ministries*, 740 S.W.2d 411, 412 (Tenn. 1987)).

We now turn to the facts of the case before us, keeping in mind that the Worker's Compensation Act is a remedial statute, which is to be liberally and equitably construed in furtherance of its purposes and in favor of compensation. *See* **Tenn. Code Ann. § 50-6-116**; *Wait*, 240 S.W.3d at 224. "The determination of whether an injury arose out of and in the course of a worker's employment is a question of fact." *Phillips v. A & H Constr. Co., Inc.*, 134 S.W.3d 145, 149 (Tenn. 2004). St. Thomas Hospital cannot use the exclusivity provision of the Act to secure a judgment as a matter of law unless it can show there was no genuine dispute of material fact that Plaintiffs' injuries arose out of and in the course and scope of their employment. *See* **Clawson**, 250 S.W.3d at 63.

As noted above, Plaintiffs concede that their injuries occurred "in the course of" their employment. However, regarding the "arising out of" requirement, Plaintiffs contend that "there was no causal connection between the conditions under which the work was required to be performed and the resulting damage to their health." The basis of Plaintiffs' argument is that "carbon monoxide is not a risk inherent in the workplace of a credit union" and "not 'a peculiar danger' to which the employees of a credit union are exposed."

Although carbon monoxide exposure is not a risk inherent in the workplace in *all* credit unions, under the facts of *this case*, it was a risk or hazard of Plaintiffs' employment due to the location of their offices just above the water heater in the basement. This was one of the "conditions under which the work [was] required to be performed." *See Trosper*, 273 S.W.3d at 604. The situation is comparable to the one in *Electro-Voice v. O'Dell, Inc.*, 519 S.W.2d 395, 397 (Tenn. 1975), where the Court concluded that at a particular manufacturing plant, bees were "part of the environment of working on the assembly line and, consequently, were a risk or hazard of appellee's employment." *See also* **Atkins v. Wozniak Indus., Inc.**, No. W2000-00665-WC-R3-CV, 2001 WL 101799, at *1-2 (Tenn. Workers' Comp. Panel Feb. 7, 2001) (involving a spider bite at a plant).

Plaintiffs attempt to distinguish **Electro-Voice** and **Atkins** on the basis that the bees and spiders were "a known hazard" at each of the respective manufacturing plants, and Plaintiffs claim that carbon monoxide was not "a risk known to the plaintiffs before their injuries occurred." In response to the motion for summary judgment, Plaintiffs submitted the job descriptions for each of their positions, which listed robbery as a potential risk of their employment, but not carbon monoxide exposure. Nevertheless, we do not believe that Plaintiffs' lack of knowledge of the hazard prevents a finding that their injuries arose out of their employment. Foreseeability is not the test in workers' compensation cases. *Volz v. Southerland*, 292 S.W.2d 385, 388 (Tenn. 1956).

> [I]f the injury can be seen to have followed as a natural incident of the work
> and to have been contemplated by a reasonable person familiar with the whole

-7-

situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and have flowed from that source as a rational consequence.

*Id.* (citing *Davis v. Wabash Screen Door Co.*, 204 S.W.2d 87 (Tenn. 1947)).

Plaintiffs also argue that their "mere presence . . . in an office which became saturated with carbon monoxide does not mean that their injuries arose out of their employment." They further argue that an injury which is "purely coincidental or contemporaneous or collateral with the employment" will not be considered as arising out of employment. We agree. However, when discussing the "coincidental, contemporaneous, or collateral" cases, our Supreme Court has cautioned that "it is easy to mistake the rule of these cases by extending their dicta beyond the confines of their facts." **Hall v. Auburntown Indus., Inc.**, 684 S.W.2d 614, 616 (Tenn. 1985). The Court further explained that "there is no requirement of a special risk in a case like this one, where it is obvious that nothing extraneous to the employment caused the injury." **Id.** at 617.

Although Plaintiffs' arguments, at first glance, appeared persuasive, we have carefully considered each of them and find them without merit. As noted by Justice Burnett in **Jackson v. Clark & Fay, Inc.**, 270 S.W.2d 389, 395 (Tenn. 1954) (J.Burnett and J.Prewitt, dissenting):

> 'The few and seemingly simple words 'arising out of and in the course of the employment' have been the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion. From their number counsel can, in most cases, cite what seems to be an authority for resolving in his favour, on whichever side he may be, the question in dispute.' *Lord Wrenbury in Herbert v. Foxx & Co.*, 1916, 1 A.C. 405, 419.

> We think that this statement is without a doubt one of the most truthful that can be found anywhere in the law books. Anyone who makes any search and study of the decisions will find the statement true without question.

Again, "an injury arises out of the employment 'when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work [was] required to be performed and the resulting injury.'" **Anderson v. Save-A-Lot, Ltd.**, 989 S.W.2d 277, 280 (Tenn. 1999) (quoting *T.J. Moss Tie*

*Co. v. Rollins*, 235 S.W.2d 585 (Tenn. 1951) (alteration in original)). The phrase "causal connection" means "cause in the sense the accident had its origin in the hazards to which the employment exposed the employee while doing his work." ***Phillips***, 134 S.W.3d at 150; ***City of Lawrenceburg v. Nelson***, 407 S.W.2d 674, 678 (Tenn. 1966). The relation of the employment to the injury is the "essential point of inquiry." ***Bell***, 597 S.W.2d at 734. Considering all the circumstances in this case, we conclude that Plaintiffs' injuries have a rational, causal connection with their employment and the conditions under which their work was required to be performed. This was not a situation where the work environment was merely a coincidental setting for an injury that could have occurred elsewhere. The employment conditions subjected Plaintiffs to the hazard of carbon monoxide. We find this case analogous to ***International Yarn Corporation v. Casson***, 541 S.W.2d 150, 151 (Tenn. 1976), where an employee was injured when the roof of the building where she worked collapsed during a rainstorm. The employee argued that such a hazard was not peculiar to her employment, but the Supreme Court rejected her argument because "[her] presence in a building that could not withstand the force of ordinary rainfall was a circumstance directly related to the employment." ***Id.*** As St. Thomas Hospital aptly stated before the trial court, "The plaintiffs worked in a building in a confined space near a gas-powered device. Whether they knew of that device or not, their work environment made carbon monoxide a potential hazard of their employment. Their alleged exposure to carbon monoxide was peculiar to their work because it was a risk created as a result of the particular physical environment of their workplace."

When the evidence and the inferences reasonably drawn from the evidence permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law. ***Green***, 293 S.W.3d at 513. Here, the record supports no inference that the injury arose out of anything except the employment. *See* ***Hall***, 684 S.W.2d at 617. Thus, there is no genuine dispute of material fact that Plaintiffs' injuries arose out of and in the course of their employment, *see* ***Clawson***, 250 S.W.3d at 63, and the trial court erred in denying the motion for summary judgment filed by St. Thomas Hospital.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for entry of an order granting summary judgment to St. Thomas Hospital. Costs of this appeal are taxed to the appellees, Mary Coleman, Chloe Nguyen, and Cassandra Dixon, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.