



FILED
Aug 18, 2020
09:11 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Brett Rosasco ) | Docket No.     2019-03-1563A |
| ) | |
| v.                              ) | State File No.   114808-2019 |
| ) | |
| West Knoxville Painters, LLC, et al.     ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers'    ) | |
| Compensation Claims             ) | |
| Pamela B. Johnson, Judge          ) | |

---

### Affirmed and Remanded

---

The employee suffered serious injuries when a tree fell on him as he exited a portable toilet located adjacent to the job site where he was working as a painter. The employer denied the employee's request for medical and temporary disability benefits, asserting the employee's injuries resulted from a non-compensable "act of God" and did not arise primarily out of his employment. Following an expedited hearing, the trial court denied the employee's request for benefits, determining the employee failed to demonstrate he was likely to prevail at trial in establishing that his injuries arose primarily out of his employment. The employee has appealed. We affirm the result reached by the trial court and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Cary L. Bauer, Knoxville, Tennessee, for the employee-appellant, Brett Rosasco

J. Allen Callison, Nashville, Tennessee, for the employer-appellee, West Knoxville Painters, LLC

### Factual and Procedural Background

Brett Rosasco ("Employee") was employed as a painter for West Knoxville Painters ("Employer"). On October 31, 2019, Employee was painting a covered residential porch in the course and scope of his employment. He described the weather conditions that morning as "getting really, really windy," adding that "we took a break at that moment because it was getting so windy." Employee walked to a portable toilet located at the edge

1

of the street in front of the lot adjacent to the property where he was working. He described the portable toilet as being located "maybe like 15 [or] 20 feet from where our vehicles were parked right beside the house." In a declaration entered in evidence during an expedited hearing, he stated that he had been told he "was supposed to use [the] Porta Potty located in a cul-de-sac immediately next to the home where [he] was working."[1] While he was in the portable toilet, he heard what he described as sounding like something "breaking" and concluded he needed to get out quickly. He testified he "turned around and started to walk out the door, and when [he] got about . . . five steps out of the door, a tree fell on [his] right shoulder and pinned [him] to the ground," resulting in serious injuries.[2] Employer denied Employee's claim for workers' compensation benefits, asserting Employee's injuries were the result of an "'Act of God' that was unforeseeable and unpreventable by the Employer."

Following Employee's filing of a petition for benefits, Employee requested that the court conduct an evidentiary hearing and award him medical and temporary disability benefits. For purposes of the expedited hearing, the parties agreed that Employee's injuries occurred in the course and scope of his employment. The issue presented to the court was whether Employee's injuries arose primarily out of the employment. Employee asserted that "a dead tree falling is entirely preventable by intervention of human agency and, therefore, cannot constitute an 'act of God.'" He contended his injuries arose primarily out of his employment and were, therefore, compensable.

The trial court determined Employee failed to demonstrate that he is likely to prevail at trial in establishing that his injuries arose primarily out of his employment. The court concluded Employee failed to establish a causal connection between his work activities and the accident causing his injuries, stating Employee's work "placed no increased risk peculiar to his employment that a dead tree might fall on him than the general public in the same place and at the same time might face." The trial court's order further stated:

> Additionally, . . . [Employee] failed to introduce evidence that [Employer] significantly limited his ability to make choices, otherwise available to the general public, by various factors imposed on [him] by his employment. Specifically, [Employee] offered no testimony that [Employer] directed him where to use the restroom, when to use the restroom, or otherwise prohibited his ability to leave the jobsite to use the restroom at an alternate restroom, thereby subjecting him to an increased risk.

---

[1] Employer disputed this testimony and asserted it neither provided the portable toilet nor instructed employees to use it. Employer's representative testified it was common practice to ask the property owner to use facilities inside the residence.

[2] Employee sustained multiple injuries as a result of the incident. He was transported to the University of Tennessee Medical Center in Knoxville by ambulance where he later underwent surgery. The extent of his injuries and the specific medical care he received are not at issue in this appeal.

As a result, the trial court denied Employee's request for medical and temporary disability benefits. Employee has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

Tennessee's courts have long recognized that the workers' compensation law does not render an "employer an insurer against every accidental injury . . . occurring during employment." *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 515 (Tenn. 2010) (*citing Scott v. Shinn*, 105 S.W.2d 103, 105 (Tenn. 1937)). Likewise, Tennessee's courts have consistently rejected a general application of the "positional risk" doctrine in which an employee need only prove that the work brought him or her within the range of the danger by requiring his or her presence in the locale when the peril struck, even though any other person present would have also been injured regardless of his or her employment. *See Bell v. Kelso Oil Co.*, 597 S.W.2d 731, 734 (Tenn. 1980); *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 599-600 (Tenn. 1979); *Lennon Co. v. Ridge*, 412 S.W.2d 638, 644 (Tenn. 1967). The "positional risk" doctrine has been adopted in some jurisdictions "based on the principle that employees who are on the job and performing duties for their employers should be compensated for injuries occurring in the course thereof." *Logsdon v. ISCO Co.*, 618 N.W.2d 667, 673 (Neb. 2000).

Tennessee's workers' compensation law defines "injury" to mean "an injury by accident . . . arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14) (2019). The phrases "arising primarily out of" and "in the course and scope of" are related but have important differences. The phrase "in the course and scope" refers to the time, place, and circumstances of an employee's injury. *See Crew*

3

*v. First Source Furniture Grp.*, 259 S.W.3d 656, 664 (Tenn. 2008). An injury that occurs while an employee is performing his or her job at the time and place assigned by the employer is one that occurs in the course and scope of the employment. *See Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). Here, whether Employee was in the course and scope of his employment at the time of his injury was not in dispute at the expedited hearing. As stated by Employer's counsel in the expedited hearing, "I'm willing to stipulate for today that [Employee] was in the course and scope," after which the judge noted that "the course [and] scope is not an issue today."

What is at issue, however, is whether Employee's injuries arose primarily out of his employment. The phrase "arising out of" refers to a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Id.* The event causing the injury must have its origin in a risk connected with the employment. *Wilhelm v. Krogers*, 235 S.W.3d 122, 127 (Tenn. 2007). When an employee is injured as a result of an "act of God" or a natural hazard, to satisfy the "arising out of" requirement, the employee must prove that the injury was caused by an increased risk peculiar to the nature of the employment and not a hazard common to the general public at the time and place where it occurred. *Hill v. St. Paul Fire and Marine Ins. Co.*, 512 S.W.2d 560, 562 (Tenn. 1974). As a general matter, an injury will not be considered to have arisen out of the employment unless it "emanate[d] from a peculiar danger or risk inherent to the nature of the employment. Thus, an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered arising out of the employment." *Wait v. Travelers Indem. Co.*, 240 S.W.3d 220, 228 (Tenn. 2007) (citations omitted).

In his brief, Employee presents the issue as whether the dead tree falling on him in a windstorm was an "act of God." Employee asserts that the tree's falling on him was not an "act of God," and that his injuries arose primarily out of his employment. He rests his position on the following statements in the trial court's order addressing what constitutes an "act of God":

> An act of God is "[a]n overwhelming, unpreventable event caused exclusively by forces of nature, such as an earthquake, flood, or tornado. The definition has been statutorily broadened to include all natural phenomena that are exceptional, inevitable, and irresistible, the effects of which could not be prevented or avoided by the exercise of due care or foresight. . . . Any misadventure or casualty is said to be caused by the act of God when it appears by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention."

(Citations omitted.)

4

Here, the parties agreed that the tree in question was dead. Employee asserts that a dead tree "can and should be cut-down [sic] so as to prevent it from falling on passers-by." According to Employee, "[w]hen a dead tree is blown-over [sic] in a wind storm, that is not an 'unpreventable event' nor is it 'exceptional, inevitable, and irresistible,' as it can and should 'be prevented or avoided by the exercise of due care or foresight.'" Further, Employee reasons that had the property owner removed the dead tree, "the wind storm, an undeniable 'act of God,' would have been unable 'exclusively' to knock the tree over onto [Employee]."

We do not find controlling or persuasive Employee's argument distinguishing the forces of nature described as the windstorm from the hazard presented by the dead tree. Rather, we see the dispositive issue as whether there was a causal connection between the conditions under which Employee was required to work and his resulting injuries. Based on the evidence introduced at the expedited hearing, the trial court concluded Employee's work activities did not present a risk greater than the risk common to the general public at the same time and place. We conclude the evidence does not preponderate against this finding.

The trial court's order stated that Employee "offered no testimony that [Employer] directed him where to use the restroom, when to use the restroom, or otherwise prohibited his ability to leave the jobsite to use the restroom at an alternate restroom, thereby subjecting him to an increased risk." Two exhibits admitted into evidence stated that Employee "had been told that [he] was supposed to use a Porta Potty located in a cul-de-sac immediately next to the home where [he] was working." However, the evidence on this issue was disputed, as Employer's representative testified that Employer's standard practice when an Employee needed to use the restroom was to "ask[] the customer."

Nonetheless, this factual dispute is not determinative of whether there was a causal connection between Employee's work and his resulting injuries. Rather, we, as did the trial court, look to all of the evidence and the circumstances to determine whether the particular conditions of Employee's work on the day in question exposed him to an increased risk peculiar to his work that was not borne by the general public at the same time and place. The trial court concluded the evidence and the circumstances were insufficient for the court to determine that Employee would likely prevail at trial in establishing that his injuries arose primarily out of his employment. We must presume "that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7).

In short, insufficient evidence was presented to establish that Employee's employment exposed him to a greater risk of being injured than what was faced by any member of the general public under the same circumstances. The evidence indicated that the event occurred on a public street and was not the result of a hazard incident to Employee's work as a painter. Accordingly, having carefully considered the evidence and

5

the totality of the circumstances presented, we conclude the trial court did not err in determining that Employee would not likely prevail at trial in establishing that his injuries arose primarily out of his employment.

## Conclusion

For the foregoing reasons, we affirm the result reached by the trial court and remand the case. Costs on appeal are taxed to Employee.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

Brett Rosasco ) Docket No. 2019-03-1563A
)
v. ) State File No. 114808-2019
)
West Knoxville Painters, LLC, et al. )
)
)
Appeal from the Court of Workers' )
Compensation Claims )
Pamela B. Johnson, Judge )

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 18th day of August, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Cary L. Bauer | | | | X | clbauer@sidgilreath.com |
| Allen Callison | | | | X | allen.callison@mgclaw.com |
| Pamela B. Johnson, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Olivia Yearwood signature*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov