FILED
**Mar 15, 2021**
**12:07 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Patricia Harris | ) Docket No. 2019-06-1008 |
| | ) |
| v. | ) State File No. 31940-2019 |
| | ) |
| Nashville Center for Rehabilitation | ) |
| and Healing, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard January 28, 2021 |
| Compensation Claims | ) via WebEx |
| Joshua D. Baker, Judge | ) |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

The employee was injured in the course and scope of her employment when she slipped and fell while attempting to avoid a large flying insect. The employer denied the claim, asserting the employee's injury did not arise primarily out of her employment. Relying on the employee's unrefuted testimony that roaches were part of the employee's working environment, the trial court determined that roaches were a hazard of the employment and that the employee's injuries arose primarily out of her employment. The court ordered the employer to pay temporary and permanent disability benefits and medical expenses but denied the employee's request for attorney's fees on the unpaid medical expenses. The employer has appealed the award of benefits, and the employee has appealed the denial of the request for attorney's fees on the unpaid medical expenses. We affirm the trial court's determination regarding compensability, reverse the trial court's denial of attorney's fees on the unpaid medical expenses, and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Judge David F. Hensley joined. Presiding Judge Timothy W. Conner dissented.

Richard R. Clark, Jr., and Lauren Ray Hall, Nashville, Tennessee, for the employer-appellant/appellee, Nashville Center for Rehabilitation and Healing

Brett L. Rozell, Lebanon, Tennessee, for the employee-appellant/appellee, Patricia Harris

**Factual and Procedural Background**

Patricia Harris ("Employee") was working as a certified nursing assistant ("CNA") for Nashville Center for Rehabilitation and Healing ("Employer") when she sustained an injury to her left wrist in the early morning hours of April 25, 2019. Employee was performing rounds to check on patients when an insect startled her by suddenly flying into her face. While attempting to deflect and avoid the insect, Employee fell, injuring her left wrist. She was taken by ambulance to Saint Thomas Midtown Hospital where she was diagnosed with a closed, nondisplaced distal radius fracture of her left wrist. She was next seen by a provider at CareNow Urgent Care who confirmed her diagnosis and made a referral to an orthopedic specialist. On May 3, Employee was evaluated by Dr. Jane Siegel, an orthopedic surgeon, who placed Employee in a splint and returned her to work with restrictions.

Employer filed a Notice of Denial on May 8 asserting Employee's injury did not arise primarily out of the employment. Following Employer's denial, Employee continued to treat with Dr. Siegel under her private insurance and, during her May 17 visit, decided to undergo surgical repair of her wrist. During this visit, Dr. Siegel restricted Employee from working until after surgery. On May 21, Dr. Siegel performed an open reduction and internal fixation of Employee's fracture.

After filing a petition for benefits, Employee continued to treat with Dr. Siegel until she was released on November 6. In a questionnaire sent to Dr. Siegel by Employee's counsel on September 23, Dr. Siegel agreed that Employee's left wrist injury resulted from her fall at work and that her employment contributed more than fifty percent in causing the injury to her left wrist, considering all causes. Dr. Siegel was deposed on February 27, 2020, and testified that Employee retained a one percent permanent medical impairment as a result of the workplace injury.

At trial, the parties stipulated that the medical treatment Employee received for her injury was reasonable and necessary, that the medical expenses incurred for her treatment were reasonable, that Employee had a one percent medical impairment as a result of her injury, and the amount of Employee's weekly compensation rate. The issues to be decided by the trial court were compensability of Employee's injury, Employee's entitlement to temporary disability benefits, and Employee's entitlement to attorney's fees and discretionary costs.

Employee was the only witness to testify in person at trial. She stated that part of her job involved "do[ing] rounds every two hours," and that, at the time of the work incident, she was performing rounds and checking on patients. She described the incident resulting in her injury in the following manner:

[W]hen I got to room 608, I had my head down reading the paper that the nurse had given me. And something come [sic] flying in my face. And when I looked up it was a big old cockroach – it looked like a big cockroach, a big flying bug that got up in my face. And I was trying to get it out of my face and I slipped back and fell.

When asked about the "bug situation" at Employer's facility, Employee stated it was "[r]idiculous" and testified to seeing bugs on the patients' beds. She said the presence of bugs had been reported to Employer, explaining that when bugs are seen "you have to report it." Employee's testimony as to the presence of insects inside the facility was uncontroverted.

The trial court found Employee's testimony credible with regard to having seen insects in the facility on previous occasions and noted that Employer "offered no contrary evidence." Based upon Employee's testimony, the court concluded that roaches were part of the working environment and were a hazard of the employment, explaining

the roach became a hazard like a puddle or other object on the floor when it entered the building. The bug flew at [Employee] as she walked down the hallway. She tried to avoid it and fell, breaking her wrist. This was the cause of her accident, and the Court holds the accident was compensable.

Following the trial, the court ordered Employer to provide reasonable and necessary medical treatment for Employee's wrist injury and appointed Dr. Siegel as the authorized treating physician. The court awarded permanent partial disability benefits based on the one percent medical impairment rating, accrued temporary disability benefits, and discretionary costs. It also awarded Employee's counsel a fee of twenty percent of Employee's permanent disability award and twenty percent of Employee's temporary disability award. The court denied Employee's counsel's request for a fee based on a percentage of unpaid medical expenses, stating "[t]he law does not provide for an attorney's fee unless the employee pays for the treatment out of pocket." Employer and Employee have appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2020). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. Of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn.

3

Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).

A trial court's award of attorney's fees is discretionary and an appellate court's review of such a decision applies an "abuse of discretion" standard of review. *Grissom v. UPS*, No. M2016-00127-SC-R3-WC, 2017 Tenn. LEXIS 4, at *7 (Tenn. Workers' Comp. Panel Jan. 9, 2017). An abuse of discretion occurs if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

## Analysis

This appeal presents two issues. First, Employer contends the trial court erred in determining that Employee's injury arose primarily out of her employment. Second, Employee contends the trial court erred in denying her attorney a fee based on twenty percent of the contested medical expenses. We address each issue separately.

### *Whether Employee's Injury Arose Primarily out of the Employment*

Employer contends the proof was insufficient to establish that insects were a part of Employee's work environment and was insufficient to establish that the insects constituted a hazard incident to the employment. As such, Employer contends Employee's workplace injury did not "arise primarily out of" the employment.[1] For the reasons that follow, we conclude Employee's injury arose primarily out of her employment.

The requirements that an injury "arise out of" and occur "in the course of" employment are not synonymous, although both elements exist to ensure a work connection to the injury for which the employee seeks benefits. *Wait v. Travelers Indem. Co. of Illinois*, 240 S.W.3d 225 (Tenn. 2007). The term "in the course of" refers to the time, place, and circumstances of the injury, while "arising out of" refers to causation.

---

[1] Employer additionally asserts the trial court "based its decision on what amounts to a negligence analysis in consideration of the causal connection between the employment and the injury." Employer contends the insect that flew in Employee's face "was, at best, the proximate or 'but for' cause of the injury" and asserts "proximate cause is not enough to establish a 'causal connection.'" We disagree with Employer's characterization of the basis of the trial court's analysis and find no merit in Employer's insistence that the trial court erroneously based its decision on a negligence analysis.

4

*Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 643 (Tenn. 2008). Here, it is undisputed that Employee's injury occurred in the course and scope of her employment. Accordingly, our focus turns to whether Employee's injury arose primarily out of her employment.

An accidental injury arises out of the employment "when there is apparent to the rational mind, upon consideration of all of the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Phillips v. A&H Const. Co.*, 134 S.W.3d 145, 150 (Tenn. 2004). The phrase "causal connection" means "cause in the sense the accident had its origin in the hazards to which the employment exposed the employee while doing his work." *Id.* The determination of whether an injury arose out of a worker's employment is a question of fact. *Id.* at 149.[2]

Tennessee appellate courts and courts in other jurisdictions have considered various "risk doctrines" when faced with issues concerning whether a workplace injury arises out of the employment. Professor Larson categorized these risk doctrines into five categories: (1) the peculiar-risk doctrine; (2) the increased-risk doctrine; (3) the actual-risk doctrine; (4) the positional-risk doctrine; and (5) proximate cause. *See generally* 1 Lex K. Larson, Larson's Workers' Compensation § 3.01-.06 (Matthew Bender, Rev. Ed.). According to Professor Larson, both "[t]he peculiar-risk test, requiring that the source of harm be in its nature (as distinguished from its quantity) peculiar to the occupation, and the proximate-cause test, requiring foreseeability and absence of intervening cause, are now largely obsolete." *Id.* at § 3.syn. As to the remaining three doctrines, Professor Larson concludes that "[t]he increased-risk test is still the prevalent test in the United States today." *Id.* at § 3.03. Further, he concludes that the actual-risk doctrine "is a more defensible rule [than the peculiar-risk or increased-risk rule] since there is no real statutory basis for insisting upon a peculiar or increased risk, as long as the employment subjected [the] claimant to the actual risk that caused the injury." *Id.* at § 3.04.

In a 1979 case, the Tennessee Supreme Court noted Professor Larson's categories of risk doctrines and stated that it had not adopted the positional-risk doctrine, explaining that "[w]e think it may be an oversimplification to classify various jurisdictions as following the peculiar-risk, the positional-risk or the actual risk-test, etc." *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 600 (Tenn. 1979). In *Hudson*, the employee drove his tractor-trailer to a Kentucky Fried Chicken and obtained an order to take away from the establishment. While re-entering the truck's cab with his meal he was shot by assailants, permanently paralyzing him from the waist down. The trial court denied benefits, concluding that, although the employee was in the course of his work at the time of the assault, his injury did not arise out of the employment. *Id.* at 598. The Supreme Court reversed the trial court, stating that "the result we reach in this case is not to be

---

[2] We are also mindful that, in addition to the requirements identified in the cases noted above, Tennessee's Workers' Compensation Law requires proof that the injury arose *primarily* out of and in the course *and scope* of the employment. Tenn. Code Ann. § 50-6-102(14) (emphasis added).

5

construed as an adoption of the positional-risk test, or an abandonment of the peculiar-risk test." *Id.* at 600. The Court observed that "the standards employed by this Court in deciding whether accidents arise out of employment have led to diverse results." *Id.*

After addressing several cases in which employees were injured as a result of assaults, a fire, or a storm, the Court in *Hudson* turned to the particular facts leading to the employee's assault and concluded "these circumstances provide a rational connection with the employment," which the Court determined to be analogous to two of the cases addressed by the Court. *Id.* at 603. The Court did not, however, adopt a specific risk doctrine or a bright-line rule for determining whether an injury arises out of the employment.

The Tennessee Court of Appeals was faced with a similar issue thirty-one years later in *Coleman v. St. Thomas Hospital*, 334 S.W.3d 199 (Tenn. Ct. App. 2010). In *Coleman*, the employees of a credit union, housed in a building owned by the defendant hospital, alleged they suffered various injuries and medical conditions as a result of carbon monoxide exposure. The employees filed a tort claim against the hospital asserting their injuries did not arise out of their employment, and, therefore, they were not subject to the exclusive remedy provisions of the workers' compensation law. *Id.* at 201. The defendant hospital filed a motion for summary judgment that the trial court denied, finding that the plaintiffs' tort claims were not barred by the exclusive remedy doctrine. *Id.* The Court of Appeals granted the hospital's request for an extraordinary appeal to address whether the plaintiffs' tort claims were barred by the exclusive remedy provisions of the workers' compensation law. Addressing methods to determine when an injury arises out of the employment, the Court of Appeals stated the following:

> Various judicial "tests" and "doctrines" have emerged for determining when an injury arises out of and occurs in the course of employment, such as the "positional doctrine," the "peculiar hazard doctrine," the "foreseeability test," the "street-risk doctrine," and others. However, our Supreme Court has consistently abstained from adopting any particular judicial test, doctrine, formula, or label that purports to clearly define the line between accidents and injuries which arise out of and in the course of employment [and] those which do not[.] The Court has repeatedly rejected the use of artificial labels, stating that classification and labeling is not the best method of determining whether an injury is compensable. The Court has found it difficult, perhaps impossible to compose a formula which clearly defines those accidents resulting in compensable injuries. *As such, in Tennessee, [t]here is no formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment and those which do not. Instead, each case must be decided with respect to its own attendant circumstances and not by resort to some formula.*

*Id.* at 203-04 (internal quotations and citations omitted) (emphasis added).

The *Coleman* Court explained that the terms "arising out of" and "in the course of" were not synonymous and identified what each phrase encompassed before summarizing that an injury generally arises out of and is in the course of employment "if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment." *Id.* at 204 (citations omitted). Further, the Court stated:

> Our Supreme Court has often stated that an injury "must result from a *danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work*" in order to be compensable. *See, e.g.*, *Foreman [v. Automatic Sys.]*, 272 S.W.3d [560,] 572; *Anderson*, 259 S.W.3d at 696; *see also Wait*, 240 S.W.3d at 228 ("Generally, for an injury to 'arise out of' employment, it must emanate from a peculiar danger or risk inherent to the nature of the employment."). Accordingly, an injury that is purely coincidental, contemporaneous, or collateral with the employment will not be considered as arising out of the employment. *Foreman*, 272 S.W.3d at 572; *Anderson*, 259 S.W.3d at 696; *Wait*, 240 S.W.3d at 228.

*Id.* at 204 (emphasis added); *see also Doe v. P.F. Chang's China Bistro*, No. W2016-01817-COA-R9-CV, 2017 Tenn. App. LEXIS 584, at *12 (Tenn. Ct. App. Aug. 29, 2017).

Thus, Tennessee appellate courts have not established a bright-line rule or specific risk doctrine that we are required to apply, and there is no statutory basis for requiring a "peculiar" risk or an "increased" risk. Instead, an injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Phillips*, 134 S.W.3d at 150 (Tenn. 2004); *see also Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005); *Fritts v. Nat'l Cas. Corp.*, 163 S.W.3d 673, 677 (Tenn. 2005). Further, as noted in *Coleman*, in addition to a causal connection that is apparent to the rational mind, the injury "must result from a *danger or hazard peculiar to the work*." *Coleman*, 334 S.W.3d at 204 (emphasis added). In other words, rather than applying a specific risk doctrine, in order for the injury to arise primarily out of employment, the totality of the circumstances must show both (1) a causal connection between the conditions under which the work is required to be performed and the resulting injury and (2) that the injury resulted from a danger or hazard peculiar to the work or was caused by a risk inherent in the nature of the work.[3]

---

[3] In his dissent, our colleague states that we rely "in part on a more general statement" of the law as set out in cases with dates of injury before the passage of the 2013 Workers' Compensation Reform Act, adding that "this is not a complete statement of the law in Tennessee for several reasons." He fails to note our inclusion of the requirement that an injury "must result from a danger or hazard peculiar to the work" as *Coleman* instructs. In addition, *Chaney v. Team Technologies, Inc.*, 568 S.W.3d 576 (Tenn. 2019), cited by our colleague, likewise recognizes that "[t]o establish that an injury arose out of employment, an

7

Here, Employer asserts the proof was not sufficient to establish that insects were part of Employee's work environment or presented a hazard of the employment. The trial court concluded that roaches in Employer's facility "were part of the working environment" and consequently, "a hazard of [her] employment." We must decide whether the preponderance of the evidence supports these factual determinations. The only evidence in the record regarding the presence of roaches in the facility comes from Employee's testimony. The trial court acknowledged there was no "expert testimony about a roach infestation" but found Employee's uncontroverted testimony about the presence of bugs inside the facility to be credible. Employee testified she often saw roaches while at work and on patients' beds. She testified employees were supposed to report seeing insects to Employer and could file a maintenance request in that regard.[4] Employee claimed she did not know where the bugs came from but described them as "humongous," also testifying that that the bugs "shouldn't be on the patient's bed. They shouldn't be on me."

Employee described with particularity what caused her to fall, testifying she was performing rounds and reacted to the insect that suddenly flew in her face, which she said caused her to fall and injure her wrist. The circumstances of her employment required her to make rounds through the facility. She testified her duties included performing rounds every two hours to check on her patients. In the course of performing those duties she sustained an injury when the insect suddenly flew in her face, resulting in her efforts to ward off the bug and her fall. Employer offered no proof concerning the presence or absence of insects inside its facility, and Employee's testimony was not disputed or contradicted. Accordingly, we conclude the preponderance of the evidence established that the presence of insects in Employer's facility was part of Employee's work environment and presented a hazard peculiar to her work sufficient for us to conclude that Employee's injuries arose primarily out of her employment.

*Attorney's Fees*

Employee's counsel contends the trial court erred in denying his request for attorney's fees related to contested medical expenses.[5] In its order, the court stated "[t]he law does not provide for an attorney's fee unless the employee pays for treatment out of pocket." Because Employee's private health insurance paid for the costs of treatment, the

---

employee has to allege enough facts to show 'a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" Id. at 579 (*citing Blankenship v. Am. Ordnance Sys., LLS*, 164 S.W.3d 350, 354 (Tenn. 2005)). Respectfully, we submit we are in agreement as to the applicable law and differ here only in respect to whether the evidence was sufficient to establish that the injury resulted from a danger or hazard peculiar to the work.

[4] Employee did not produce any maintenance requests for roach or insect problems at Employer's facility.

[5] Although post-hearing submittals regarding the attorney's fee request were filed by Employee's counsel, those documents were not part of the record on review.

court declined counsel's request for fees related to disputed medical expenses. In Employee's brief on appeal, counsel asserts that "payment of any contested medical expenses should be considered a recovery or award [and] the trial court's decision on that matter should be overturned."

The Tennessee Supreme Court has held that contested medical expenses are considered part of the "recovery or award" upon which attorney's fees may be based. *See Langford v. Liberty Mutual Ins. Co.*, 854 S.W.2d 100, 102 (Tenn. 1993). We have previously noted that the 2013 Workers' Compensation Reform Act modified section 50-6-226(a), which governs awards of attorney's fees, but the changes did not vitiate or impair the precedent established in *Langford*. *Bowlin v. Servall, LLC.*, No. 2017-07-0224, 2020 TN Wrk. Comp. App. Bd. LEXIS 70, at *11 (Tenn. Workers' Comp. App. Bd. Nov. 25, 2020). Thus, while the trial court is given discretion as to the award of attorney's fees, Employee's contested medical expenses are to be considered part of Employee's award for purposes of attorney's fees.

A plain reading of section 50-6-226(a)(1) indicates that the attorney's fees awarded in this instance would be "paid by the party employing the attorney." Tenn. Code Ann. § 50-6-226(a)(1). Thus, an award of attorney's fees based on a percentage of unpaid medical expenses would be deducted from Employee's award. We note, however, that during oral argument counsel for Employee stated he did not want his client "negatively affected" by an award of attorney's fees reducing her recovery. Nevertheless, we find the trial court applied an incorrect legal standard in limiting attorney's fees to a percentage of the expenses paid by Employee "out of pocket."

### Conclusion

For the foregoing reasons, we conclude the evidence does not preponderate against the trial court's compensability determination, and we affirm the trial court's order with respect to the award of temporary and permanent disability benefits, medical benefits, and discretionary costs. We reverse the trial court's determination that the recovery of attorney's fees for medical expenses is limited to a percentage of medical expenses paid by Employee "out of pocket." Accordingly, we remand the case for the trial court to address the attorney's fees consistent with this opinion. Costs on appeal are taxed to Employer.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Patricia Harris | ) | Docket No. 2019-06-1008 |
| | ) | |
| v. | ) | State File No. 31940-2019 |
| | ) | |
| Nashville Center for Rehabilitation and | ) | |
| Healing, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

---

**Dissent**

---

Conner, J., dissenting.

This case requires us to consider the meaning of the statutory phrase "arising primarily out of and in the course and scope of employment" as that phrase is used in Tennessee Code Annotated section 50-6-102(14) (2020). Because I conclude the majority opinion gives this phrase too expansive a meaning under the factual scenario presented here, I respectfully dissent.

Courts in this state, as well as courts in other jurisdictions, have struggled historically with defining statutory provisions addressing the work-relatedness of an injury. According to the oft-cited Professor Larson, "[f]ew groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation." *Anderson v. Westfield Grp.*, 259 SW.3d 690, 695 (Tenn. 2008) (quoting 1 Lex K. Larson, Larson's Workers' Compensation § 3.01 (Matthew Bender, Rev. Ed.)). In attempting to explain this phenomenon, Professor Larson described risk doctrines adopted by various jurisdictions as evolving from the "peculiar-risk doctrine" to the "increased-risk doctrine," then the "actual-risk doctrine," and finally the "positional-risk doctrine." Larson at §§ 3.02–3.05.[1] Each step on this continuum broadens the meaning of the phrase "arising out of employment," making it easier for an injured worker to establish the work-relatedness of his or her injury. Determining which risk doctrine or legal test applies in any given factual scenario has presented a daunting challenge.

---

[1] Larson suggests that a fifth approach, the "proximate cause" test, is "virtually obsolete." Id. at § 3.01.

The Tennessee Supreme Court has, at times, acknowledged and commented on Professor Larson's categorization of risk doctrines. For example, in *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597 (Tenn. 1979), the Court reviewed the risk doctrines and examined a number of prior cases it described as having reached "diverse results." *Id.* at 600. It noted several cases where the court focused on whether the injury was caused by a "foreseeable" event or "peculiar" hazard incident to the employment. *Id.* at 600-601. In adopting the "street risk doctrine," for example, the *Hudson* Court concluded that the injury suffered by the employee due to a random assault was a "foreseeable hazard incident to the employment of a truck driver of a motor freight line." *Id.* at 602. After *Hudson*, Tennessee courts recognized various other doctrines to be applied in specific factual scenarios. *See, e.g.*, *Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 1992) (recognizing the "personal comfort doctrine" to allow compensation for injuries occurring while an employee is engaged in reasonably foreseeable "personal comfort" activities at work); *Anderson v. Westfield Grp.*, 259 S.W.3d 690, 696 (Tenn. 2008) (reaffirming the "direct and natural consequences" rule in circumstances where an injury subsequent to the work accident was deemed to "flow from" the original injury).

In *Wait v. Travelers Ind. Co. of Ill.*, 240 S.W.3d 220 (Tenn. 2007), the Supreme Court addressed whether the "street risk" doctrine, adopted by the Court in *Hudson*, applied in a situation where the injured worker was randomly assaulted while working in her home. After reviewing the law governing assault cases, the Court noted that "for an injury to 'arise out of' employment, it must emanate from a *peculiar danger or risk inherent to the nature of the employment*." *Id.* at 228 (emphasis added). In concluding the employee's claim did not fall under the street risk doctrine, the Court reasoned that "[t]here is nothing in the record to fairly suggest or provide any weight to the assertion that the plaintiff's injuries were causally connected with the *nature of her employment*." *Id.* at 230 (emphasis added). Thus, it was not enough that the employee's job placed her in the position to be injured; the Court stressed there must be evidence supporting a conclusion that the hazard which caused the injury was "connected with the *nature* of the employment." *Id.* (emphasis added).

As discussed in the majority opinion, in *Coleman v. St. Thomas Hospital*, 334 S.W.3d 199 (Tenn. Ct. App. 2010), the Tennessee Court of Appeals addressed a tort claim filed against a hospital that housed a credit union where employees had allegedly been exposed to carbon monoxide. The employees asserted they were not limited to workers' compensation benefits as their exclusive remedy because their injuries did not "arise out of" their employment. *Id.* at 201. The trial court agreed with the plaintiffs and denied the defendant's motion for summary judgment. *Id.* On appeal, after discussing Larson's "risk doctrines" and concluding that Tennessee had adopted no set formula, the Court of Appeals considered the arising out of requirement and explained that the Supreme Court has "often stated" that an employee must prove the work injury resulted "from a *danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work* in order to be compensable." *Id.* at 204 (emphasis added) (internal

2

quotation omitted).  The court further noted that "an injury that is purely coincidental, contemporaneous, or collateral with the employment will not be considered as arising out of the employment."  *Id.*  *See also Chaney v. Team Technologies, Inc.*, 568 S.W.3d 576, 579 (Tenn. 2019) ("An employee cannot merely assert that her injury occurred at work; she has to allege that her injury resulted from a 'danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work.'") (quoting *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005)); *Adkins v. Studsvik, Inc.*, No. E2014-00444-SC-R3-WC, 2015 Tenn. LEXIS 588, at *17 (Tenn. Workers' Comp. Panel July 21, 2015) ("The mere presence of the employee at the place of the injury because of the employment is not sufficient, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work.").

Thus, as recently as 2019, and on multiple occasions since 2007, Tennessee courts, including our Supreme Court, have reiterated what I believe to be the general rule in Tennessee: in order for an injury to arise primarily out of the employment, the employee must show a "danger or hazard peculiar to the work," or the injury must have been caused by a "risk inherent in the nature of the work."[2]  The majority opinion relies in part on a more general statement: "An accidental injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."  *Phillips v. A&H Const. Co.*, 134 S.W.3d 145, 150 (Tenn. 2004).  I conclude this is not a complete statement of the law in Tennessee for several reasons. First, this language is contained in cases with dates of injury before the passage of the 2013 Workers' Compensation Reform Act.  Second, because the Reform Act added the word "primarily" to the "arising out of" requirement, I conclude the Act tightened, not loosened, the causation component.[3]  Third, after the passage of the Reform Act and as recently as 2019, the Supreme Court has emphasized the need for evidence of a "danger or hazard peculiar to the work" or a "risk inherent in the nature of the work."  *Chaney*, 568 S.W.3d at 579.  Thus, a mere "causal connection," as described in *Phillips*, is simply not good enough.

Finally, I note that, under pre-reform law, courts were directed to resolve any reasonable doubt as to causation in favor of the employee.  For example, in *Jackson v. Goodyear Tire & Rubber Co.*, No. W2007-01131-WC-R3-WC, 2008 Tenn. LEXIS 563 (Tenn. Workers' Comp. Panel Aug. 26, 2008), the Supreme Court's Workers' Compensation Appeals Panel affirmed a finding of compensability in a case where the

---

[2] As noted above, I acknowledge that other doctrines and tests have been developed over the years to address specific factual scenarios, but I cannot conclude that the facts of this case fit any of those exceptions to the general rule.

[3] For injuries occurring on or after July 1, 2014, the employee has the burden of proving that the employment "contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2020).

3

employee alleged an aggravation of his pre-existing back condition after standing from a chair during his lunch break. *Id.* at *2. In affirming the award, the Appeals Panel noted that "[t]he situation presented here is undoubtedly at the outer limit of compensability." *Id.* at *6. The Appeals Panel reasoned that the result was supported by the "overarching principle" that "any reasonable doubt as to whether an injury 'arose out of the employment' is to be resolved in favor of the employee." *Id.* at *7. That "overarching principle" is no longer the law. As the Appeals Panel explained in *Willis v. All Staff*, No. M2016-01143-SC-R3-WC, 2017 Tenn. LEXIS 455, at *11 (Tenn. Workers' Comp. Panel Aug. 3, 2017), "Employee's argument . . . that all reasonable doubts concerning causation should be construed in [the employee's] favor is without merit." Instead, the law now prohibits a court from construing the law "in a manner favoring either the employee or the employer." *Id.* (quoting Tenn. Code Ann. § 50-6-116).

In the present case, it is undisputed that Employee's injury occurred after a flying insect startled her and she moved to avoid the insect, resulting in her fall. I cannot conclude that the presence of a flying insect inside Employer's facility was a "danger or hazard peculiar to the work" or that the injury was caused by a "risk inherent in the nature of the work." Although I acknowledge that Employee's testimony regarding the presence of insects inside the facility was unrefuted, I fail to see how the presence of insects was a hazard "peculiar to the work" of a certified nursing assistant or that the insect presented a "risk inherent in the nature of the work."[4] Instead, I conclude her injury was "purely coincidental, contemporaneous, or collateral with the employment" and thus not compensable. Under these circumstances, I would reverse the trial court's decision and dismiss the case. I therefore respectfully dissent.

---

[4] In my view, the majority opinion, in effect, applies Professor Larson's "actual risk" doctrine, which allows compensation as long as the employee can prove that an actual hazard in the workplace caused the injury regardless of whether that hazard was "peculiar to the work" or "inherent in the nature of the work." I find no precedent suggesting the Tennessee Supreme Court has adopted or applied the "actual risk" doctrine in any comparable factual scenario.

4



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Patricia Harris | ) | Docket No. 2019-06-1008 |
| | ) | |
| v. | ) | State File No. 31940-2019 |
| | ) | |
| Nashville Center for Rehabilitation and Healing, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' Compensation Claims | ) | Heard January 28, 2021 |
| | ) | via WebEx |
| Joshua D. Baker, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 15th day of March, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Brett Rozell<br>Clay Rozell | | | | X | brozell@rma-law.com<br>crozell@rma-law.com |
| Richard R. Clark, Jr.<br>Lauren Ray Hall | | | | X | rclark@eraclides.com<br>lrayhall@eraclides.com |
| Joshua D. Baker, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*Olivia Yearwood* (signature)

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov